IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EAGLE FIRE, INC.,

    Plaintiff,

v.                                        Civil Action No. 3:06cv264

EAGLE INTEGRATED
CONTROLS, INC.,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Eagle Integrated Controls, Inc.'s ("Eagle Integrated") Motion for an Extension (Docket No. 4) and Eagle Fire, Inc.'s ("Eagle Fire") Motion for Entry of Default (Docket No. 5). For the reasons set forth herein, the motion for an enlargement of time is denied and the motion for entry of default is granted.

**STATEMENT OF FACTS**

**A.  Background**

According to the Complaint, Eagle Fire is a Virginia corporation with its principal place of business in Chesterfield County. In addition to Virginia, Eagle Fire has offices in North Carolina and South Carolina. Eagle Fire specializes in water-based protection systems, fire sprinkler systems, detection systems, life safety consultations, and systems layout. It provides inspection, testing, and maintenance services to a variety of clients. Eagle

Fire is the owner of the federally-registered EAGLE FIRE trademark, U.S. Registration No. 2,566,489, and has been continuously using the EAGLE or EAGLE FIRE name and mark since early 1991.  In its Complaint, Eagle Fire alleges that Eagle Integrated also markets, sells, installs, and services fire suppression, alarm, and sprinkler systems in Virginia.

On July 21, 2005, Eagle Fire notified Eagle Integrated of its mark and of instances of actual confusion (e.g., Eagle Fire states that it has received calls from unhappy customers of Eagle Integrated as well as criticism from a Richmond fire marshal that confused Eagle Integrated with Eagle Fire).  Eagle Fire demanded that Eagle Integrated cease and desist further use of the EAGLE name and mark, and requested a response to its letter by August 1, 2005.  See Pl. Mem. In Opp'n, Ex. 1.  On July 28, 2005, Eagle Fire received a letter from Carl Witmeyer, Esquire, indicating that he had been retained by Eagle Integrated to look into the matter, but that he would be unavailable for two weeks because of a previously scheduled vacation.  See id. Ex. 2.  Consequently, Eagle Fire extended its deadline to August 19, 2005, but also took the occasion to note that Eagle Fire was in possession of further evidence of third party confusion.  See id. Ex. 3.

Upon his return, Mr. Witmeyer requested evidence of actual confusion, which Eagle Fire provided on September 2, 2005.  See id. Ex. 4.  A series of calls between counsel followed in September and

October, which culminated in an October 11, 2005 letter from Mr. Witmeyer stating that Eagle Integrated had agreed to change its name to TW Systems.  The letter stated that the name change itself would not take long to effectuate, but that coordinating the rest of the necessary changes might take as much as six months.  Presumably, Mr. Witmeyer was referring to the changes that would need to be made to uniforms, signs, vehicles, stationary, and the like.  See id. Ex. 5.

On February 14, 2006, Eagle Fire wrote to Mr. Witmeyer, expressing dismay at the fact that Eagle Integrated had apparently taken no steps to effectuate the change from Eagle Integrated to TW Systems.  According to Eagle Fire, Eagle Integrated had failed even to take the relatively simple step of terminating the Eagle Integrated name with the State Corporation Commission, and registering the TW Systems name.  See id. Ex. 6.  On February 15, 2006, Mr. Witmeyer sent Eagle Fire a facsimile of a Certificate of Assumed or Fictitious Name, indicating the change from Eagle Integrated to TW Systems.  However, the certificate was dated February 15, 2006.  See id. Ex. 7.

In response to the apparent lack of action by Eagle Integrated, Eagle Fire demanded a detailed timeline, to be delivered by February 28, 2006.  See id. Ex. 8.  Mr. Witmeyer responded on February 22, 2006, indicating that he had complied with Eagle Fire's requests.  See id. Ex. 9.  Eagle Fire responded

3

with some befuddlement at the notion that Eagle Integrated had complied, and provided examples of the types of actions it wanted Eagle Integrated to address in a detailed timeline.  See id. Ex. 10.  On March 15, 2006, Mr. Witmeyer sent Eagle Fire another letter, promising that Eagle Integrated was doing everything that it could to meet Eagle Fire's requests.  See id. Ex. 11.  Eagle Fire responded on March 21, 2006, again repeating its request for a detailed timeline of the actions Eagle Integrated intended to take in order to effectuate its agreement to terminate doing business under the EAGLE name.  The letter also indicated that, if by March 27, 2006, Eagle Integrated had not provided adequate assurance that the conversion to TW Systems would be completed by April 11, 2006 (six months after the October 11, 2006 letter confirming the agreement), Eagle Fire would file suit.  Eagle Fire attached a copy of the intended Complaint to this correspondence.  See id. Ex. 12.  According to Eagle Fire, Eagle Integrated continued to do business under that name as of April 11, 2006, so Eagle Fire followed through on its stated intention to file suit, providing Mr. Witmeyer with another courtesy copy of the Complaint at the time of filing.

**B. Procedural History**

Eagle Fire filed its Complaint on April 18, 2006, alleging five separate claims: Count 1 alleges trademark infringement; Count 2 alleges false designation of origin under 15 U.S.C. § 1125(a);

Count 3 alleges unfair competition under 15 U.S.C. § 1125(a)(1) and common law; Count 4 alleges trademark dilution under 15 U.S.C. § 1125(c)(1); and Count 5 alleges breach of contract.  As relief, Eagle Fire requests a preliminary and permanent injunction prohibiting Eagle Integrated from using the EAGLE name and mark in connection with the installation, sale, and servicing of fire protection and detection systems.  Eagle Fire also seeks lost profits, actual damages, the surrender of materials incorporating the EAGLE trademark, attorney's fees, and punitive damages.

   The Complaint was properly served on April 20, 2006.  The 20-day response period mandated by Fed. R. Civ. P. 12(a)(1)(A) expired on May 10, 2006.  Eagle Integrated had filed no responsive pleading as of May 22, 2006, when Eagle Fire filed its Motion for Default Judgment (Docket No. 3).  On May 23, 2006, on behalf of Eagle Integrated, Mr. Witmeyer filed the pending motion for an enlargement of time to file an answer and/or response to the Complaint.  According to Eagle Integrated's motion, it misunderstood the importance of filing an answer because "it disagreed with the allegations stated in the Complaint."  The motion then states that Eagle Integrated has retained counsel to file an answer and/or response, and notes that Mr. Witmeyer had been involved in preparation for a jury trial in Westmoreland County, as co-counsel and as a witness.

5

On May 26, 2006, Eagle Fire filed the pending motion for entry of default, and its memorandum in support thereof. Simultaneously, Eagle Fire filed its memorandum in opposition to Eagle Integrated's motion for an extension of time.  Prior to a conference call on June 1, 2006, Eagle Integrated submitted directly to chambers a brief in support of its motion for an extension of time as well as its proposed Answer.[1]  The brief asserts "excusable neglect" and restates Eagle Integrated's misunderstanding of the importance of filing a response to the Complaint as justification for its failure to answer.  Eagle Integrated also states that its counsel sought Eagle Fire's agreement to its motion for an extension of time by letter dated May 19, 2006, which was nine days after the date that the answer was due.  Eagle Fire never responded to that letter.

A conference call was held on June 1, 2006, in which the Court ordered Eagle Integrated to file a detailed timeline of the actions taken by Eagle Integrated to effectuate the change to TW Systems.[2] Based on the affidavit of Mark Tucker, the President of Eagle

---

[1] The Brief In Support of Motion for Extension and the proposed Answer were never actually filed with the Court.  However, the Court has considered the brief in ruling on the motion for an enlargement of time.  The Clerk will be directed to file out of time the Brief In Support of Motion for Extension and to place the Answer on the left side of the file.

[2] During the conference call, Mr. Witmeyer stated that he had initially been under the impression that Eagle Integrated planned to use different counsel to handle the litigation. However, Eagle Integrated did not assert that position in its brief and it will not be considered.

6

Integrated/TW Systems, it appears that some actions were taken to effectuate the change in January, specifically the design of new signs for trucks and buildings. Otherwise, most of the changes appear to have taken place since February 14, 2006, with a flurry of activity in late February and late May. On June 8, 2006, Eagle Integrated filed a memorandum in opposition to the motion for entry of default with a few repetitive and conclusory statements.

Eagle Fire disputes the suggestion that Eagle Integrated has cured the alleged trademark violations. The affidavit of Eagle Fire's president, Harry Hoffon, points to the continued use of www.eagleintegrated.com and associated e-mail addresses, yellow pages advertisements, and the use of trucks with the EAGLE mark and name. And, indeed, the affidavit of Mark Tucker is on a letterhead that displays a logo with what appears to be a bald eagle, despite the use of the corporate name, "TW Systems."

## DISCUSSION

### I. Motion For Extension Of Time

Motions for enlargement of time are governed by Fed. R. Civ. P. 6(b). Generally, with respect to time periods specified by the rules of civil procedure, as opposed to time periods set forth in statute, "the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or

7

(2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b).  In this case, Eagle Integrated failed to request an enlargement of time before the expiration of the 20-day response period on May 10, 2006. Consequently, Eagle Integrated was obligated to file a formal motion for an enlargement of time, and to show cause and excusable neglect.

The Supreme Court addressed the meaning of the term "excusable neglect" in a similar context in Pioneer Ins. Services Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395 (1993).  In Pioneer, the question before the Supreme Court dealt with Fed. R. Bankr. P. 9006(b), which addresses requests for an enlargement of time under the Federal Rules of Bankruptcy Procedure.  "The Supreme Court's interpretation has been found to apply to the term 'excusable neglect' as used in contexts outside of the bankruptcy rules because it was based on the 'commonly accepted meaning of the phrase' and was formulated by reference to the Federal Rules of Civil Procedure." St. Clair v. General Motors Corp., 10 F.Supp.2d 523, 528 n.2 (M.D.N.C. 1998)(citing Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 533 (4th Cir. 1996) (applying Supreme Court's definition of "excusable neglect" to Fed. R. App. P. 4(a)(5)).

"Because Congress has provided no [] guideposts for determining what sorts of neglect will be considered 'excusable,'" the Supreme Court concluded "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. The Supreme Court listed a number of the factors which courts should consider, including "the danger of prejudice to the [adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[3] Id. at 392.

---

[3] In this case, Eagle Integrated has placed the failure to file a timely answer on its own shoulders, rather than the shoulders of its counsel. Nevertheless, it is appropriate to take note of the Supreme Court's pronouncement in Pioneer that it is proper to penalize a party for the acts and omissions of its attorney in failing to file timely, just as it is proper to penalize the client for the sins of its lawyer in a number of other contexts. See id. at 396. Parties voluntarily choose their attorney, and thus cannot "avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." Id. (quoting Link v. Wabash R. Co., 370 U.S. 626, 633-634 (1962)). This principle applies with equal force in the

"Excusable neglect comprises both a demonstration of good faith by the moving party and a reasonable basis for noncompliance with the specified time period."  1 Moore's Federal Practice § 6.06(3)(b).  As noted by the Supreme Court in Pioneer, in most cases, "[i]gnorance of when a time period expires does not qualify as excusable neglect, nor does a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity. In most instances, mistaken reliance on provisions of the Rules or unfamiliarity with the Rules will not rise to the level of excusable neglect."  Id. § 6.06(3)(c).  See, e.g., U.S. v. Premises Known as Lots 14, 15, 16, 19, 47, and 48, 682 F.Supp. 288, 290 (E.D.N.C. 1987) (denying motion for enlargement of time on grounds of ignorance of law in civil arena and lack of time due to client's criminal case).

Eagle Integrated made a deliberate decision not to focus on this matter after it was served with process.  Indeed, it did not file a timely answer because it disagreed with the assertions in the Complaint.  Moreover, Eagle Integrated's lawyer had an advance copy of the proposed complaint in March, long before it was filed. And, he was given a courtesy copy of it after it was filed. Nonetheless, the defendant and its lawyer gave the matter no attention.  That is deliberate conduct, not excusable neglect.

---

context of Rule 6(b), and "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."  Id. (emphasis in original).

Eagle Integrated's brief simply states that it did not appreciate the importance of filing an answer to the Complaint because it believed that the allegations in the Complaint were untrue. This period of delay was certainly within Eagle Integrated's control, but more importantly this delay, even if characterized as neglect, is the sort of conduct that the cases suggest does not rise to the level of excusable neglect. The brief in support of the motion for extension of time also references the busy schedule of its counsel, as a ground for excuse. That likewise has been rejected as an argument for excusable neglect. Consequently, the Court finds that Eagle Integrated has failed to demonstrate cause or excusable neglect as required by Rule 6(b), and thus that the motion for an enlargement of time must be denied.

**II. Motion For Entry Of Default**

Default is a two step process. Before a plaintiff can move for default judgment, the clerk or the court must enter default. See Fed. R. Civ. P. 55. The entry of default is a procedural prerequisite to the entry of a default judgment. See 10 Moore's Federal Practice 55.10(1). Consequently, the Court must address Eagle Fire's motion for entry of default before the motion for default judgment, despite the fact that the motion for default judgment was filed first. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that

fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Thus, the question is whether Eagle Integrated has failed to plead or otherwise defend, such that entry of default is appropriate.

The pleadings referred to in Rule 55(a) are those listed in Fed. R. Civ. P. 7(a): answer to a complaint, a reply to a counterclaim denominated as such, an answer to a cross-claim, and an answer to a third-party complaint.  See 10 Moore's Federal Practice § 55.10(2)(a).  The relevant pleading in this case is Eagle Integrated's answer.  Eagle Integrated has submitted an untimely and as yet unfiled answer, but it is indisputable that Eagle Integrated failed to plead within the required time.

The next question is whether Eagle Integrated has otherwise defended.  While Rule 55 leaves "otherwise defend" undefined, "it certainly includes the sort of motions that may be made under Rule 12, or any other motions that indicate that the responding party is resisting the claims made in the complaint, third-party claim, counterclaim, or cross-claim."  Id. § 55.10(2)(b).  In this case, Eagle Integrated did nothing to defend prior to the expiration of the 20-day period on May 10, 2006.  Since May 10, 2006, Eagle Integrated has filed a motion for an extension of time, and has filed briefs in opposition to the motion for entry of default. Eagle Integrated's filings make clear that it intends to resist the claims made in the Complaint, but a motion for an extension of time

cannot be deemed an assertion of a defense. Regardless, there is no disputing the fact that Eagle Integrated failed to file anything prior to the expiration of the 20-day response period.

The affidavit of David J. Sensenig sets forth the necessary facts for a finding that Eagle Integrated failed to plead or otherwise defend prior to the expiration of the 20-day response period. Thus, the requirements of Rule 55(a) have been satisfied and it is appropriate to enter default.

## CONCLUSION

For the foregoing reasons, Eagle Integrated's Motion for an Extension (Docket No. 4) is denied and Eagle Fire's Motion for Entry of Default (Docket No. 5) is granted. The parties shall contact the Court in a telephone conference to arrange a hearing on Eagle Fire's Motion for Default Judgment (Docket No. 3).

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                            /s/
                                      Robert E. Payne
                                      United States District Judge

Richmond, Virginia
Date: June 20, 2006